UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| Z.P. | : | CIVIL ACTION |
| | : | NO. 3:19-cv-00315-WWE |
| PLAINTIFF | : | |
| | : | |
| v. | : | |
| | : | |
| YALE UNIVERSITY, | : | |
| YALE-NEW HAVEN HOSPITAL, | : | |
| PETER SALOVEY, | : | |
| JONATHAN HOLLOWAY, | : | |
| DR. PAUL GENECIN, | : | |
| DR. LORRAINE SIGGINS, | : | |
| JOHN DOES 1-3, | : | |
| JANE DOES 1-3, | : | |
| | : | APRIL 22, 2019 |
| DEFENDANTS | : | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

The defendants, Yale University, Yale-New Haven Hospital, Peter Salovey, Jonathan Holloway, Dr. Paul Genecin, and Dr. Lorraine Siggins, submit the following memorandum of law in support of their motion to dismiss.

### I.  FACTUAL BACKGROUND

This case stems from the plaintiff's medical leave from Yale University, following an episode in which she reported serious suicidal ideation to her Chaplain and to mental health professionals at both Yale Health[1] and Yale New Haven Hospital ("YNHH") on November 2, 2016.  The first time the plaintiff sought mental health treatment at Yale University was August 29, 2016, at the start of her senior year.  She was encouraged at that time to seek mental health treatment by her Chaplain after reporting that she was feeling stressed due to her decision to

---

[1] Yale Health is the facility where most Yale students receive their health treatment; it is separate from YNHH.

1

withdraw from her position as a Freshman Counselor.  That decision made the plaintiff ineligible to live on the Old Campus with the freshmen, and she was transferred to a single room in Calhoun College.[2]  She related to her therapist at the end of August that she fantasized about leaving Yale and "escaping" in some way in order to make her responsibilities as a Freshman Counselor "go away".  She further stated that she only had one close friend at Yale, who also did not like Yale.  This friend later took a medical leave of absence due to her own mental health concerns, which were exacerbated by two recent suicides on campus.  Other than the one close friend, the plaintiff told her therapist that she had not made any close connections during her three years at Yale.  However, the plaintiff did report that she was able to make good connections with people in other places, such as at home and during her experiences abroad.

The plaintiff further reported to her therapist during the course of her treatment over the next two months that she was not looking forward to her final year at Yale, because she did not like the campus culture and did not feel like she could be herself.  She also reported that she struggled with her social life at Yale and that she did not want to be friends with people at Yale; therefore, she felt isolated and alienated from her classmates.  She did, however, report feeling comfortable with friends at home.  She also reported that she preferred the person she was before coming to Yale, and that she believes that Yale made her sad and that she wanted to return to being an "optimistic and happy person."  During her sessions with her therapist she indicated that she did have a close relationship with her mother.

On November 4, 2016, following the suicides of two Yale students and the decision of her one close friend to leave school because of her emotional distress over the suicides, the plaintiff seriously contemplated suicide.  She first counted out thirty Advil PM pills before deciding that

---

[2] Calhoun College is now known as Hopper College.

2

would not be sufficient to cause her death.  She next considered hanging herself from the light fixture in her dorm room, but decided it would not be strong enough to hold her.  The next morning, she was still feeling suicidal and she went to visit her Chaplain, who immediately brought her to Yale Health.  The Yale Health psychiatrist who evaluated her sent the plaintiff by ambulance to the Yale-New Haven Hospital Emergency Department.  Although she agreed to be admitted to the hospital, the doctor who sent her there issued a "physician's emergency certificate," for the following reasons:

- ■  She was actively suicidal, with a plan, the night before; and she was still suicidal when he evaluated her the next day.

- ■  She was living alone in her college dorm, with no supervision.

- ■  Although she had established a therapeutic relationship with a mental health care professional and had been seeing her for more than two months, the plaintiff did not consult with her therapist when she was feeling suicidal.  This meant that she was "on her own" and she would not likely contact her therapist in the future if she developed active suicidal ideation with a plan.

- ■  The plaintiff reported having very few friends, and her best friend had just left school because of her own emotional distress over the campus suicides.  Therefore, staying in her college dorm, when she had indicated that she was feeling isolated at Yale and without friends, would be a dangerous place.

- ■  Although the psychiatrist was also aware of the plaintiff's difficult relationship with her father, the psychiatrist felt it would be safer to have the plaintiff stay with family where she could be monitored, instead of on a college campus, where she had complete freedom of movement and activity.  In addition, the plaintiff indicated that she would likely go to New York to live with her sister, with whom she had an excellent relationship; therefore, the poor relationship with her father would not be a reason to have her stay on campus.

Yale University made the decision to require that the plaintiff take a medical leave, in the belief that it was too dangerous for her to remain on campus.  On November 11, 2016, the plaintiff appealed that decision.[3]  See Complaint at ¶36.  Jonathan Holloway, the Dean of Yale College,

---

[3] The complaint states that the appeal was made on "On November 11, 2017." This is a typographical error; the plaintiff appealed the decision on November 11, 2016.

denied the plaintiff's appeal.  See Complaint at ¶40.  The plaintiff was released from the hospital on November 17, 2016, but she was not permitted to return to school at that time.  See Complaint at ¶41.  The plaintiff returned to school for the Fall 2017 semester, completed her studies at the conclusion of that semester and was subsequently awarded her degree.  Currently, she is employed as an SAT tutor in Japan.

The plaintiff brought this action claiming that the defendants discriminated against her because of her disability, namely clinical depression, in violation of Title III of the ADA, Section 504 of the Rehabilitation Act, and the Fair Housing Amendments Act.  She also alleges the following state law claims: common law invasion of privacy; breach of a confidential relationship; and violation of Conn. Gen. Stat. § 17a-506.

## II.     LEGAL STANDARD

"[D]ismissal is appropriate [pursuant to Fed. R. Civ. P. 12(b)(6)] if the plaintiff can prove no set of facts that would entitle him to relief."  Cooper v. Parsky, 140 F.3d 433, 440 (2d Cir. 1998.)  To avoid dismissal, a plaintiff must do more than plead mere "conclusory allegations or legal conclusions masquerading as factual conclusions….the point at which conclusory allegations become valid pleadings lies where the plaintiff has asserted sufficient facts that, when construed liberally, allow the inference of a violation." (Citations omitted; internal quotation marks omitted.) Plumey v. New York State, 389 F. Supp. 2d 491 (S.D.N.Y. 2005).  See also Greogry v. Daley, 243 F.3d 687, 692 (2d Cir. 2001).  In deciding a Rule 12(b)(6) motion, courts "stop well short of saying that plaintiffs bear no burden at the pleading stage," because they must allege "those facts necessary to a finding of liability."  Amron v. Morgan Stanley Inv. Advisors, Inc., 464 F.3d 338, 343-44 (2d Cir. 2006).

### III.   ARGUMENT

#### a.   The Plaintiff Has Failed To State A Claim Upon Which Relief Can Be Granted in Count I.

1. Monetary Damages Are Not Available To A Private Plaintiff Under Title III of the ADA.

Count I purports to state a claim under Title III of the ADA. The Second Circuit has admonished: "Monetary relief…is not available to private individuals under Title III of the ADA." Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 86 (2d Cir. 2004). Consequently, the district courts in the Second Circuit have routinely dismissed claims for monetary relief under Title III of the ADA for failure to state a claim upon which relief can be granted.  See Bernas v. Cablevision Systems Corp., 215 Fed. Appx. 64, 67-68 (2d Cir. 2007); Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 68 (2d Cir. 2004).

One relevant case involved the application of this principle in an action brought against a hospital in connection with mental health care, similar to the present action.  In Goonewardena v. N. Shore Long Island Jewish Health Sys., 2012 U.S. Dist. LEXIS 187361 *11-12 (E.D.N.Y. Nov. 5, 2012), *adopted by*, Goonewardena v. N. Shore Long Island Jewish Health Sys., 2013 Dist. LEXIS 42529 (E.D.N.Y. Mar. 25, 2013), the plaintiff claimed that his doctors discriminated against him in violation of Title III of the ADA when they refused to take him to the aftercare unit to treat him because of his obsessive compulsive disorder and schizoaffective disorder.  The defendants moved to dismiss the ADA claim for failure to state a claim upon which relief could be granted because no money damages were available under Title III of the ADA. Id. at *19. Magistrate Judge Bloom concluded that Title III did not authorize private actions for monetary damages and therefore recommended dismissal of the plaintiff's Title III claim.  The district court adopted the magistrate's recommendation.  Gonnewardena v. N. Shore Long Island Jewish Health

Sys., 2013 U.S. Dist. LEXIS 42529 *2 (E.D.N.Y. Mar. 25, 2013).  Cases to the same effect are legion. See Richter v. Conn. Judicial Branch, 2014 U.S. Dist. LEXIS 40571 *34 (D. Conn. Mar. 27, 2014)(Arterton, J.); Ajuluchuku-Levy v. Schleifer, 2009 U.S. Dist. LEXIS 116953 (E.D.N.Y. Dec. 15, 2009); Fiorica v. Univ. of Rochester, 2008 U.S. Dist. LEXIS 27638 *4-5 (W.D.N.Y. Mar. 31, 2008); Shaywitz v. Am. Bd. of Psychiatry & Neurology, 675 F. Supp. 2d 376, n.3 (S.D.N.Y. 2009); Antkies v. New York State DMV, 2006 U.S. Dist. LEXIS 95970 *5 (E.D.N.Y. Mar. 20, 2006); Melendez v. Monroe College, 2006 U.S. Dist. LEXIS 73040 *23 (E.D.N.Y. Oct. 6, 2006); Spychalsky v. Sullivan, 2003 U.S. Dist. LEXIS 15704 *15 (E.D.N.Y. Aug. 29, 2003).  Since monetary damages may not be awarded under Title III of the ADA, Count One should be dismissed.

2.   Title III of the ADA Does Not Apply to Individual Defendants.

In the unlikely event that the Court rules that money damages are available under Title III of the ADA, Count I should still be dismissed with respect to all of the named individuals.  These individual defendants are improper defendants in both their official and personal capacities.  In their official capacities, these defendants do no operate, own, or lease a private facility offering public accommodation.  See, e.g., Goodewardena v. New York, 475 F. Supp. 2d 310, 321-22 (S.D.N.Y. Feb. 14, 2007) ("the individual defendants…are improper defendants [under Title III of the ADA] as in their official capacities they do not operate, own or lease a private entity which offers public accommodation").

Similarly, there is no allegation that these defendants personally operated any private facility offering public accommodations. Title III of the ADA only "governs public accommodations by private entities" and, therefore,"[s]uits against individuals in their personal capacities are not permitted under the ADA."  Goodewardena, 475 F. Supp. 2d at 321 (citing

Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn, 280 F.3d 98, 107 (2d Cir. 2001)); Kahn v. N.Y.U. Medical Center, 2007 U.S. Dist. LEXIS 49840 *4 (S.D.N.Y. July 10, 2007), aff'd, 328 Fed. Appx. 758 (2d Cir. 2009) (with respect to Title III claim, "courts in this District have held that 'individual[s] may not be held liable under the ADA…in either their individual or official capacities'"); Coddington v. Adelphi Univ., 45 F. Supp. 2d 211, 217 (E.D.N.Y. 1999) (in the context of a Title III claim, "the court holds that the individual defendants may not be held personally liable under either the ADA or the Rehabilitation Act").

Therefore, Count One should be dismissed as to all defendants.

### b. Count II Should Be Dismissed Because § 504 of the Rehabilitation Act Claims May Not Be Brought Against Individual Defendants.

In Count II, the plaintiff has attempted to state claims against the four individual defendants under § 504 of the Rehabilitation Act. This Count must be dismissed, because § 504 of the Rehabilitation Act does not apply to individual defendants in their individual capacities. See Taylor v. Norwalk Cmty. College, 2015 U.S. Dist. LEXIS 130461 *32 (D. Conn. Sep. 28, 2015) (Haight, J.). By its terms, § 504 applies to federal financial recipients. See United States Dep't of Transp. v. Paralyzed Veterans of America, 477 U.S. 597, 605-06 (1986) (explaining that "Congress limited the scope of § 504 to those who actually 'receive' federal financial assistance because it sought to impose § 504 coverage as a form of contractual cost of the recipient's agreement to accept the federal funds"). In the present case, Yale University and Yale-New Haven Hospital are recipients of federal financial assistance, but the individual defendants receive no federal funds. Thus, the plaintiff has failed to state a claim under which relief can be granted as to the named individual defendants and this count should be dismissed as to them.

      **c. Punitive Damages Are Not A Permissible Remedy Under Section 504 of the Rehabilitation Act.**

In her prayer for relief under Count Two, which alleges that the defendants violated § 504 of the Rehabilitation Act, the plaintiff has requested punitive damages. The United States Supreme Court has held that punitive damages may not be awarded in suits brought under § 504 of the Rehabilitation Act. Barnes v. Gorman, 536 U.S. 181, 189 (2002). See also, Denuzzo v. Yale New Haven Hosp., 465 F. Supp. 2d 148, 155 (D. Conn. 2006) (Squatrito, J.). ("[P]unitive damages may not be awarded on claims brought under § 504 of the Rehabilitation Act.") Therefore, the Court should dismiss plaintiff's claim for punitive damages under § 504 of the Rehabilitation Act.

      **d. The Plaintiff Has Failed to State A Claim Upon Which Relief Can Be Granted in Count III, Which Purports to Assert A Claim Of Discrimination In Violation Of The Fair Housing Amendments Act in Relation To The Following Defendants: Yale-New Haven Hospital, Dr. Paul Genecin, and Dr. Lorraine Siggins.**

Count Three of the plaintiff's Complaint alleges that all the defendants violated the Fair Housing Amendments Act of 1988 by "evicting her from her dorm room and otherwise severing her from the Yale community." See Complaint at ¶58. The plaintiff claims that the defendants have violated the plaintiff's rights under 42 U.S.C. § 3604 (f) by discriminating in the rental or otherwise making unavailable or denying a room in her residential college because of her disability status. This count is asserted against all defendants. It is clear that Yale University, Peter Salovey, and Jonathan Holloway were the only defendants who had the power to decline or to allow the plaintiff to return to her residential college after her commitment to the hospital. Therefore, this count should be dismissed as to the following defendants: Yale-New Haven Hospital, Dr. Paul Genecin, and Dr. Lorraine Siggins, because there is no allegation that they participated in the decision to require that the plaintiff take a medical leave following her hospitalization.

### e. Attorney's Fees And Costs Are Not a Permissible Remedy Under Any of the Plaintiff's Federal Law Claims.

42 U.S.C. § 1988 clearly delineates the federal statutes under which attorneys' fees may be awarded.  42 U.S.C. § 1988 states in pertinent part:

> Attorney's fees.  In any action or proceeding to enforce a provision of sections 1977, 1977A, 1978, 1979, 1980 and 1981 of the Revised Statutes [42 USCS § 1981-1983, 1985, 1986], title IX of Public Law 92-318 [20 USCS §§ 1681 et seq.], the Religious Freedom Restoration Act of 1993, the Religious Land Use and Institutionalized Persons Act of 2000, title VI of the Civil Rights Act of 1964 [42 USCS §§ 2000d et seq.], or section 40302 of the Violence Against Women Act of 1994, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

Since, this statute does not provide for attorney's fees in relation to Title III of the ADA, Section 504 of the Rehabilitation Act, or the Fair Housing Amendments Act, the Court should dismiss the plaintiff's claim for attorneys' fees in relation to those claims.

### f. The Plaintiff Has Failed To State A Claim Upon Which Relief Can Be Granted in Count IV, Which Purports to Assert A Claim Of Common Law Invasion of Privacy.

There are four distinct categories of "invasion of privacy" recognized in Connecticut: "(a) unreasonable intrusion upon the seclusion of another; (b) appropriation of the other's name or likeness; (c) unreasonable publicity given to the other's private life; or (d) publicity that unreasonably places the other in a false light before the public."  Goodrich v. Waterbury Republican-American, Inc., 188 Conn. 107, 128 (1982).  Given the factual allegations of the Complaint, the only possible invasion of privacy claims in the present case are the third and fourth categories.  Under either theory, the plaintiff must prove that the defendants "gave publicity" to the private information, not just that the defendants repeated the information to a small number of individuals.

In Blue v. Carbonaro, 2015 Conn. Super. LEXIS 1093 *23 (Super. Ct. May 11, 2015), the plaintiff brought claims for invasion of privacy, alleging that the defendant gave unreasonable publicity relating to his private life and cast the plaintiff in a false light. The court dismissed both claims, explaining that under either theory, the plaintiff would need to prove that there was "publicity." The court further observed that both claims rely upon the same definition of publicity: "Publicity…means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge. The difference is not of the means of communication…It is one of a communication that reaches, or is sure to reach, the public… The distinction…is one between private and public communications." (Emphasis added; internal quotations omitted.) Id. at *24, quoting Carney v. Amendola, 2014 Conn. Super. LEXIS 1206 *53 (Super. Ct. May 14, 2014). The court concluded that "it is not an invasion of privacy to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons." Id. at *24-25.

Connecticut courts have repeatedly held that verbal communication to a small group of people does not constitute "publicity," in the context of a claim for breach of privacy. Id. at *25. See also, Doe v. Hartnett, 2002 Conn. Super. LEXIS 1673 *12 (Super. Ct. May 8, 2002) (stating that "publicity" requires that "communication be published to more than a mere handful of individuals"); Bonito Mfg v. Criscuolo, 2012 Conn. Super. LEXIS 2201 (Super. Ct. Aug. 27, 2012) (granting motion to strike invasion of privacy claim based on false light where the plaintiff alleged that the defendant disclosed information to two people); Cavallaro v. Rosado, 2006 Conn. Super. LEXIS 2919 (Super. Ct. Oct. 5, 2006) (granting motion to strike false light privacy claim where the plaintiff alleged that the defendant made a negative statement about him to one person); Olivas v. DeVivo Indus., 2001 Conn. Super. LEXIS 686 (Super. Ct. Feb. 28, 2001) (granting motion to

strike false light privacy claim where defendant told three people of the alleged conduct of the plaintiff). The present plaintiff asserts that the Hospital defendants and Dr. Siggins disclosed the plaintiff's confidential information to University staff without the knowing and voluntary consent of the plaintiff. See Complaint at ¶63. Furthermore, the plaintiff asserts that this information was shared by and between University defendants without the knowing and voluntary consent of the plaintiff. See Complaint at ¶64. Since the information regarding the plaintiff is only alleged to have been shared by a small number of individuals, the allegation does not support the contention that the defendants "gave publicity" to this information, as that term is defined by Connecticut law. Therefore, the plaintiff has failed to state a claim for common law invasion of privacy in either variation of that cause of action.

To the extent that the plaintiff may claim she has asserted a common law invasion of privacy claim for having placed the plaintiff in a false light before the public, the claim should be dismissed for the additional reason that the plaintiff does not claim that the defendants made any false statements regarding her confidential information that was allegedly shared. "The essence of a false light privacy claim is that the matter published concerning the plaintiff (1) is not true; and (2) is such a major misrepresentation of his character, history, activities, or beliefs that serious offense may reasonably be expected to be taken by a reasonable man in his position." (Internal quotations and citations omitted.) Goodrich v. Waterbury Republican-American, Inc., 188 Conn. 107, 131 (1982). The plaintiff does not allege that the information allegedly shared by defendants (among themselves) was false, and therefore she has not adequately pled a claim for a common law invasion of privacy claim under the theory that the publicity has unreasonably placed the plaintiff in a false light before the public.

Because the plaintiff has not claimed that the confidential information allegedly shared by the defendants is false and because the plaintiff has not established the publicity element of either of her invasion of privacy claims, the defendants' motion to dismiss Count Four should be granted.

## g. The Plaintiff Has Failed to State A Claim Upon Which Relief Can Be Granted in Count V, Which Asserts A Claim For Breach Of Confidential Relationship in Relation To The Following Defendants: Yale University, Peter Salovey, and Jonathan Holloway and Dr. Paul Genecin.

In Count Five, the plaintiff has alleged a breach of confidential relationship. Specifically, she asserts that Yale New Haven Hospital and Dr. Siggins established a confidential physician/patient relationship with her, which they then violated by disclosing information to Yale University staff. See Complaint at ¶¶ 68, 69. Despite the fact that the Complaint only alleges the existence of a physician/patient relationship with Yale New Haven Hospital and Dr. Siggins, the Complaint states that this Count is brought "against all defendants."[4] In light of the fact that no allegation is being made against them in Count Five, that Count should be dismissed as to Yale University, Peter Salovey, Jonathan Holloway, and Dr. Paul Genecin.

## h. Count VI Should Be Dismissed Because There is No Private Cause of Action For Damages Under Conn. Gen. Stat. § 17a-506.

In Count Six, the plaintiff alleges that the defendants failed to advise her that she had a right to challenge her involuntary admission through court process in violation of Conn. Gen. Stat. § 17a-506. This claim fails because Conn. Gen. Stat. § 17a-506 does not create a private cause of action.

Conn. Gen. Stat. § 17a-506 states, in pertinent part, that:

> Any hospital for psychiatric disabilities may receive for observation and treatment any person who in writing requests to be received; but no such person shall be confined in any such hospital for psychiatric disabilities for more than three business days, after he or

---

[4] The Complaint actually refers to "the Yale Hospital defendants." However, the Complaint does not define that term. The defendants assume that the plaintiff is actually referring to Yale New Haven Hospital. None of the individual defendants is employed by that institution.

12

> she has given notice in writing of his or her desire to leave, unless an application for commitment has been filed in a court of competent jurisdiction. Such person shall be informed at the time of such admission concerning such patient's ability to leave after three days' notice pursuant to this subsection and shall also be informed that an application may be filed under subsection (e) of this section in which case such patient's ability to leave may be delayed in accordance with the provisions of said subsection.

Conn. Gen. Stat. § 17a-506(a). Conn. Gen. Stat. § 17a-506 further provides:

> Whenever a person is confined to a hospital for psychiatric disabilities under the provisions of this section and gives notice of the desire to leave under subsection (a) hereof, any person, including the person in charge of such hospital, may institute proceedings for his or her commitment in the court of probate having jurisdiction in the town where such hospital is located…Such respondent shall have the right to a probable cause hearing under the provisions of section 17a-502.

Conn. Gen. Stat. § 17a-506(e).

A reading of the plain language of the statute confirms that Conn. Gen. Stat. § 17a-506 does not expressly create a private cause of action. The Connecticut legislature clearly disfavors the practice of "supplementing" statutes through judicial interpretation. This was evidenced by the Connecticut legislature's quick and decisive reaction to the Connecticut Supreme Court's decision in State v. Courchesne, 262 Conn. 537 (2003). In that decision, the Connecticut Supreme Court "launched an attack against the plain meaning rule" of statutory construction. See Thomas A. Bishop, *The Death and Reincarnation of Plain Meaning in Connecticut: A Case Study*, 41 Conn. L. Rev. 825, 830 (2009)[5]. The Connecticut Supreme Court in Courchesne declared: "We now make explicit what is implicit in what we have already said: in performing the process of statutory interpretation, we do not follow the plain meaning rule in whatever formulation it may appear." State v. Courchesne, 262 Conn. 537, 570 (2003). According to Judge Bishop, the Connecticut Supreme Court "adopted a purposive approach to statutory interpretation," which was established earlier in the case of Bender v. Bender, 258 Conn. 733 (2001). See Thomas A. Bishop, *The Death*

---

[5] Judge Bishop sits on Connecticut's Appellate Court.

*and Reincarnation of Plain Meaning in Connecticut: A Case Study,* 41 Conn. L. Rev. 825, 832 (2009). This approach to statutory interpretation was announced by the Supreme Court in the following manner:

> The process of statutory interpretation involves a reasoned search for the intention of the legislature…we seek to determine…the meaning of the statutory language as applied to the facts of this case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter.

Bender v. Bender, 258 Conn. 733, 741 (2001). See also State v. Courchesne, 262 Conn. 537, 564-66 (2003). The Connecticut legislature was clearly dissatisfied with the Connecticut Supreme Court's "purposive" approach to statutory interpretation as evidenced by the decision to amend a pending bill in order to legislatively overrule Courchesne and Bender. The decision in State v. Courchesne was released on March 11, 2003. A mere month later, the General Assembly attached an amendment regarding the plain meaning rule to an unrelated bill already pending before its Judiciary Committee. See Thomas A. Bishop, *The Death and Reincarnation of Plain Meaning in Connecticut: A Case Study*, 41 Conn. L. Rev. 825, 830 (2009). When the bill was taken up by the State Senate, State Senator Andrew McDonald[6] spoke in its favor and made explicit his intentions in proposing the bill:

> And so, in case this bill does actually pass in accordance with the House's passage, let me be very clear for the purpose of legislative intent, that if this bill passes it is the intent to overrule the portion of State v. Courchesne which recanted or retrenched from the plain meaning rule under the rules of statutory construction.

Thomas A. Bishop, *The Death and Reincarnation of Plain Meaning in Connecticut: A Case Study*, 41 Conn. L. Rev. 825, 832. The bill did pass in both the House and the Senate. Therefore, the

---

[6] State Senator McDonald now sits on the Connecticut Supreme Court.

Connecticut legislature, in a quick and decisive manner, enacted Conn. Gen. Stat. § 1-2z, which states:

> The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes.  If, after examining such text and considering such relationship the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. (Emphasis supplied).

In other words, the interpretation of a statute begins with its plain meaning; if there is no ambiguity, then the inquiry is closed.  In the present case there is absolutely no ambiguity as to whether or not a private cause of action is permitted; a private cause of action is nowhere mentioned in the statute.  Accordingly, this Court should dismiss Count VI without any further consideration.

Even assuming arguendo that Conn. Gen. Stat. 17a-506 was ambiguous[7] as to a private cause of action, that statue would not pass the test for the implicit creation of a private cause of action.  In this regard, the Connecticut Supreme Court has observed:  "When the legislature has authorized supplementary private causes of action, it has generally done so expressly."  City of Middletown v. Hartford Electric Light Co., 192 Conn. 591, 596 (1984).  The Connecticut Supreme Court has instructed: "In determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant.  First, is the plaintiff one of the class for whose…benefit the statute was enacted? ... Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? … Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?"  (Internal quotation marks omitted.)  Gerardi v. City of Bridgeport, 294 Conn. 461, 468 (2010) (quoting Napoletano v. CIGNA Health Care of Connecticut, Inc., 238 Conn. 216, 249 (1996), cert. denied, 520 U.S.

---

[7] In order for the statute to be regarded as ambiguous, there must be language which makes it capable of being interpreted as both providing for and not providing for a private cause of action.  Since there is no language whatsoever in the statute regarding a private cause of action, there is no ambiguity.

1103 (1997)). The Supreme Court has noted: "The stringency of the test is reflected in the fact that, since this court decided *Napoletano*, we have not recognized an implied cause of action despite numerous requests." Gerardi v. City of Bridgport, 294 Conn. 461, 469-70 (2010) (quoting Provencher v. Enfield, 284 Conn. 772, 778-79 (2007)).

The first prong of the *Napoletano* test is whether the plaintiffs are within the class of persons intended to be protected by the statute. The present plaintiff is not within the class of persons intended to be protected by the statute. The statute provides for what a hospital may do in the circumstances of a person voluntarily admitting themselves into a hospital for psychiatric disabilities. Specifically, Conn. Gen. Stat. § 17a-506(a) stipulates that a hospital for psychiatric disabilities may receive for observation and treatment any person who requests to be admitted but that no person shall be confined in any hospital for psychiatric disabilities for more than three business days after such person has given notice of his or her desire to leave, unless an application for commitment has been filed by the hospital. Furthermore, § 17a-506(e) stipulates that when a person is confined to a hospital for psychiatric disabilities and gives notice of his or desire to leave, then any persons, including the person in charge of the hospital, may institute proceedings for his or her commitment in the court of probate that has jurisdiction where such hospital is located. In the present matter, the plaintiff is the person who was voluntarily admitted to the hospital and then subsequently committed to the hospital in accordance with Conn. Gen. Stat. § 17a-506(e). Consequently, the plaintiff is not within the class of persons intended to be protected by this statute. Therefore, the first factor weighs against the creation of a private cause of action.

The second prong of the *Napoletano* test asks whether there is any indication, express or implied, of the legislature's intent to create or to deny a private cause of action. The inclusion of a remedy within Conn. Gen. Stat. § 17a-506, coupled with the omission of any private cause of

16

action, indicates that the legislature did not intend to create private cause of action. Specifically, Conn. Gen. Stat. § 17a-506(e) allows for a respondent, i.e. a person who has been committed involuntarily following a voluntary admission, to request a probable cause hearing in accordance with Conn. Gen. Stat. § 17a-502. If the legislature had intended to provide the remedy of a civil cause of action for damages, it easily could have added language to Conn. Gen. Stat. § 17a-506 to accomplish that goal. That it did not weighs heavily against the creation of an implied cause of action.

The third prong of the *Napoletano* test inquires whether a private cause of action would be consistent with the underlying purpose of the statute. A private cause of action would not be consistent with the underlying purpose of the statute. Conn. Gen. Stat. § 17a-506 is included in Chapter 319i of the General Statutes, entitled "Persons with Psychiatric Disabilities." This statute is part of a broader legislative scheme that is focused on psychiatric disability, mental health, and commitment. Allowing a private cause of action for violation of Conn. Gen. Stat. § 17a-506 would interfere with this statutory scheme. Therefore, the third factor weighs against the creation of a private cause of action.

Because the language of Conn. Gen. Stat. § 17(a)-506 is clear and does not contain a private cause of action, and because an analysis of the factors set forth in *Napoletano* demonstrates that a private cause of action should not be implied, Count VI should be dismissed.

### i. Attorneys' Fees Are Not A Permissible Remedy Under The Plaintiff's State Law Claims.

In her prayer for relief for each state law claim, the plaintiff has demanded attorneys' fees. However, attorneys' fees are not awarded to the prevailing party for common law causes of action under Connecticut laws. "The general rule of law known as the American rule is that attorney's fees and ordinary expenses and burdens of litigation are not allowed to the successful

17

party absent a contractual or statutory exception….This rule is generally followed throughout the country….Connecticut adheres to the American rule….There are few exceptions.  For example, a specific contractual term may provide for the recovery of attorney's fees and costs…or a statute may confer such rights…." (citations omitted; internal quotation marks omitted) ACMAT Corp. v. Greater N.Y. Mut. Ins. Co., 282 Conn. 576, 582-83 (2007).  In the present matter, neither of the two exceptions to the American rule apply.  A contract does not exist between the plaintiff and the defendants providing for the award of attorneys' fees; and therefore, there is no contractual term providing for the recovery of attorneys' fees. The only statutory claim asserted in the complaint is a violation of Conn. Gen. Stat. § 17a-506.  That statute does not provide for a private cause of action, let alone attorneys' fees.  Therefore, the second exception to the American rule does not apply.  Consequently, the claim for attorneys' fees should be dismissed.

j. **Punitive Damages Are Not A Permissible Remedy Under the Plaintiff's State Law Claims.**

In her prayer for relief, the plaintiff has requested punitive damages in relation to each state law claim.  The rule in Connecticut is that, absent a statute specifically providing for punitive damages, punitive damages are awarded only when "the evidence shows a reckless indifference to the rights of others or an intentional wanton violation of those rights." Laurenza v. Esposito, 2018 Conn. Super. LEXIS 1493 *15 (Super. Ct. July 20, 2018).  In the present matter, the plaintiff has brought a claim under one statute, Conn. Gen. Stat. § 17a-506, which does not provide for a private cause of action, let alone punitive damages.  Therefore, the plaintiff's punitive damages claim as to Count VI should be dismissed.  The only other time punitive damages are awarded is "when the evidence shows a reckless indifference to the rights of others or an intentional wanton violation of those rights."  The plaintiff, in her remaining state law claims, has not pled either reckless

indifference or an intentional violation of the plaintiff's rights.  Therefore, punitive damages may not be awarded in relation to any of the plaintiff's state law claims.[8]

### IV.     CONCLUSION

For the foregoing reasons, Counts I, IV and VI should be dismissed in their entirety; Count II should be dismissed as to the individual defendants; Count III should be dismissed as to Yale New Haven Hospital, Dr. Paul Genecin and Dr. Lorraine Siggins; Count V should be dismissed as to Yale University, Peter Salovey, Jonathan Holloway and Dr. Paul Genecin, and the request for punitive damages should be dismissed.  Finally, the request for attorneys' fees should be dismissed as to all counts.

**THE DEFENDANTS**,

BY:    /s/ Patrick M. Noonan (#ct00189)
Patrick M. Noonan
Shannon K. Noonan
Donahue, Durham & Noonan, P.C.
741 Boston Post Road
Guilford, CT 06437
Telephone:    (203) 458-9168
Fax:               (203) 458-4424
Email:           pnoonan@ddnctlaw.com

### CERTIFICATION

I hereby certify that, on the above-written date, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.

_____/s/_____
Patrick M. Noonan

---

[8] It also bears noting that when punitive damages are allowed under a state law common law claim, they are limited to the costs of suit.  Tracy v. Smith Ins., Inc., 2014 Conn. Super. LEXIS 2734, *12, n.6 (Super. Ct. Nov. 4, 2014); Berry v. Loiseau, 223 Conn. 786, 827 (1992); Collens v. New Canaan Water Co., 155 Conn. 477, 488 (1967).