UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Z.P.<br>           PLAINTIFF<br><br>v.<br><br>YALE UNIVERSITY, YALE NEW HAVEN HOSPITAL, PETER SALOVEY, JONATHAN HOLLOWAY, DR. LORRAINE SIGGINS, JOHN DOES 1-3 and JANE DOES 1-3<br><br>           DEFENDANTS | CIVIL ACTION NO.<br>3:19-cv-00315-DJS<br><br><br><br><br>JANUARY 27, 2020 |

## **FORM 26(F) REPORT OF PARTIES' PLANNING MEETING**

Date Complaint Filed:   November 5, 2018 filed in USDC, New Jersey
November 13, 2019, Amended Complaint filed in USDC, Connecticut

Case Moved from New Jersey to Connecticut:   February 27, 2019

Date Complaint Served:   January 11, 2019

Date of Defendants' Appearance:   January 30, 2019 in USDC in New Jersey and then transferred to the USDC of Connecticut on February 25, 2019.

      Pursuant to Fed. R. Civ. P. 16(b), 26(f) and D. Conn. L. Civ. R. 16, a conference was held on January 22, 2020. The participants were:

           Robert J. De Groot, Esquire, for plaintiff, Z.P.

           Patrick M. Noonan, Esquire, for defendants, Yale University, Yale New Haven
                Hospital, Peter Salvoey, Jonathan Holloway, Dr. Lorraine Siggins.

I.  **CERTIFICATION**

Undersigned counsel (after consultation with their clients) certify that (a) they have discussed the nature and basis of the parties' claims and defenses and any possibilities for achieving a prompt settlement or other resolution of the case; and (b) they have developed the following proposed case management plan. Counsel further certify that they have forwarded a copy of this report to their clients.

II. **JURISDICTION**

A. **Subject Matter Jurisdiction**

This Court has subject matter jurisdiction over Plaintiff's federal law claims pursuant to 42 U.S.C. §12181 et. seq. 29 U.S.C. §794 and 42 U.S.C. §3604(f).

B. **Personal Jurisdiction**

Personal jurisdiction is not contested.

III. **BRIEF DESCRIPTION OF CASE**

A. **Claims of Plaintiff:**

On November 5, 2016, Z.P., a 21-year-old woman with a history of depression, presented to Yale Health seeking a consultation with a mental health provider. She was seen and sent to the Yale New Haven Hospital Emergency Department for further evaluation. Per her outpatient Yale Health on-call provider, Dr. Peluso, the patient had suicidal ideation and a Physician's Emergency Commitment [PEC] was issued.

The plaintiff was admitted to YNHH on November 5, 2016 and reported experiencing symptoms of depression over the past semester, characterized by feeling sad/down, increasing anxiety, social withdrawal, sense of hopelessness, and thoughts of "not wanting to live like this." The patient was discharged on November 17, 2016. The

University then required that she take a medical leave and prioritize her self-care and mental health treatment for the rest of the academic year, given her mental health condition.

After taking two summer courses, the plaintiff returned to Yale University in the Fall of 2017, completing her course work at the end of 2017, six months after her planned completion of courses. She is currently employed in Japan as a translator/teacher.

The plaintiff's complaint alleges the following causes of action: (1) violation of §504 of the Rehabilitation Act of 1973; (2) violation of the Fair Housing Act; (3) breach of confidential relationship; and (4) false imprisonment.

**B.      Defenses and Claims (Affirmative Defenses, Counterclaims, Third Party Claims, Cross Claims) (either pled or anticipated) of Defendants:**

Defendants deny all of the plaintiff's claims. When the PEC was issued, the plaintiff was suffering from a major depressive disorder and she was actively suicidal, which warranted hospitalization for safety, stabilization, close monitoring, diagnostic clarity and after-care planning. During the course of her hospital admission, Yale University made the decision to require that the plaintiff take a medical leave, because it was too dangerous for her to remain on campus in her then current medical condition. The plaintiff thereafter returned to campus, completed her degree and has now embarked on her work career.

**C.      Defenses and Claims of Third Party Defendants:** N/A

**IV.    STATEMENT OF UNDISPUTED FACTS**

Counsel certify that they have made a good faith attempt to determine whether there are any material facts that are not in dispute. The following material facts are undisputed:

1. In November, 2016, plaintiff was a senior at Yale University.
2. Defendant, Yale University, is an educational institution located in New Haven, Connecticut.

3

3. Defendant, Peter Salovey, is an employee of defendant, Yale University, and at the time of the incidents alleged in the complaint, was its President.

4. Defendant, Jonathan Holloway, was an employee of defendant, Yale University, and at the time of the incidents alleged in the complaint, was the Dean of Yale College.

5. Defendant, Dr. Lorraine Siggins, was an employee of defendant, Yale University, and at the time of the incidents alleged in the complaint, was the Director of Mental Health and Counseling at Yale Health.

6. On November 4, 2016, following the suicides of two Yale University students and the decision of her only close friend to leave school because of her emotional distress over the suicides, the plaintiff contemplated suicide. According to medical records, she first counted out thirty Advil PM pills before deciding that would not be sufficient to cause her death. According to medical records, she next considered hanging herself from the light fixture in her dorm room, but decided it would not be strong enough to hold her. The next morning, she she went to visit her Chaplain, Reverend Kathryn Greene-McCreight, who immediately brought her to Yale Health. The Yale Health psychiatrist who evaluated her sent the plaintiff by ambulance to the Yale-New Haven Hospital Emergency Department. Although she agreed to be admitted to the hospital, the doctor who sent her there issued a "physician's emergency certificate," for the following reasons:

a.  She was actively suicidal, with a plan, the night before; and she was still suicidal when he evaluated her the next day.

b.  She was living alone in her college dorm, with no supervision.

c.  Although she had established a therapeutic relationship with a mental health care professional and had been seeing that provider for more than two months, the plaintiff did not consult with her therapist when she was feeling actively suicidal. This meant that she was "on her own" and she would not likely contact her therapist in the future if she again developed active suicidal ideation with a plan.

d.  The plaintiff reported feeling alienated from her peers, and her only friend had just left school because of her own emotional distress over the campus suicides. Therefore, staying in her college dorm, when she had indicated that she was feeling isolated at Yale and without friends, would be a dangerous place.

e.  The treating psychiatrist felt it would be safer to have the plaintiff stay with family where she could be monitored, instead of on a college campus, where she had complete freedom of movement and activity. In addition, the plaintiff indicated that she would likely go to New York to live with her sister, with whom she had an excellent relationship; therefore, the poor relationship with her father would not be a reason to have her stay on campus.

      7.     Yale University made the decision to require that the plaintiff take a medical leave, in the belief that it was too dangerous for her to remain on campus. On November 11, 2016, the plaintiff appealed that decision. Jonathan Holloway, the Dean of Yale College, denied the plaintiff's appeal. The plaintiff was released from the hospital on November 17, 2016, but she was not permitted to return to school at that time. The plaintiff returned to school for the Fall 2017 semester, completed her studies at the conclusion of that semester and was subsequently awarded her degree.

## V. CASE MANAGEMENT PLAN

### A. Initial Disclosures

The parties will exchange initial disclosures within four weeks.

### B. Scheduling Conference

1. The parties request to be excused from holding a pretrial conference with the Court before entry of a scheduling order pursuant to Fed. R. Civ. P. 16(b).

2. The parties prefer that a scheduling conference, if held, be conducted by telephone.

### C. Early Settlement Conference

1. The parties certify that they have considered the potential benefits of attempting to settle the case before undertaking significant discovery or motion practice. Settlement is unlikely at this time.

2. The parties do not request an early settlement conference.

3. If and when a settlement conference is held, the parties prefer a settlement conference with a magistrate judge.

4. The parties do not request a referral for alternative dispute resolution pursuant to D. Conn. L. Civ. R. 16.

D. **Joinder Of Parties, Amendment Of Pleadings, And Motions Addressed To The Pleadings**

The parties have discussed any perceived defects in the pleadings and have reached the following agreements for resolution of any issues related to the sufficiency of the pleadings.

1. Plaintiff(s) should be allowed until February 3, 2020 to file motions to join additional parties and until March 2, 2020 to file motions to amend the pleadings. Motions filed after the foregoing dates will require, in addition to any other requirements under the applicable rules; a showing of good cause for the delay.

2. Defendant(s) should be allowed until February 3, 2020 to file motions to join additional parties and until March 2, 2020 to file a response to the complaint, or any amended complaint. Motions filed after the foregoing dates will require, in addition to any other requirements under the applicable rules, a showing of good cause for the delay.

E.  **DISCOVERY**

  1. Recognizing that the precise contours of the case, including the amounts of damages at issue, if any, may not be clear at this point in the case, in making the proposals below concerning discovery, the parties have considered the scope of discovery permitted under Fed. R. Civ. P. 26(b)(1). At this time, the parties wish to apprise the Court of the following information regarding the "needs of the case":

  > Plaintiff's Position: The Plaintiff resides in Japan. If possible, her deposition should be taken electronically by skype.
  >
  > Defendant's Position (if different): The defendant needs to conduct discovery on the issues of liability, past damages and future damages.

  2. The parties anticipate that discovery will be needed on all claims alleged in the Complaint and the issue of Plaintiff's damages.

  3. All discovery, including depositions of expert witnesses pursuant to Fed. R. Civ. P. 26(b)(4), will be commenced by January 27, 2020 and completed (not propounded) by December 1, 2020.

  4. Discovery will be conducted in phases, with expert disclosure to follow depositions of fact witnesses.

  5. A damages analysis will be provided by the plaintiff no later than April 1, , 2020.

  6. The parties anticipate that the plaintiff(s) will require a total of 4 depositions of fact witnesses and that the defendant(s) will require a total of 6 depositions of fact witnesses. The depositions will commence by March 2, 2020 and be completed by June 1, 2020.

7.  The parties do not request permission to serve more than 25 interrogatories.

8.  Plaintiff will designate all trial experts and provide opposing counsel with reports from retained experts pursuant to Fed. R. Civ. P. 26(a)(2) by July 1, 2020. Depositions of any such experts will be completed by September 2, 2020.

9.  Defendant will designate all trial experts and provide opposing counsel with reports from retained experts pursuant to Fed. R. Civ. P. 26(a)(2) by October 15, 2020. Depositions of such experts will be completed by December 15, 2020.

10. Undersigned counsel have discussed the disclosure and preservation of electronically stored information, including, but not limited to, the form in which such data shall be produced, search terms to be applied in connection with the retrieval and production of such information, the location and format of electronically stored information, appropriate steps to preserve electronically stored information, and the allocation of costs of assembling and producing such information. The parties agree to the following procedures for the preservation, disclosure and management of electronically stored information:

    a.  Plaintiff shall take reasonable steps to retain, until the conclusion of this lawsuit, all documents, as that term is defined in D. Conn. L. Civ. R. 26, concerning or relating to the allegations of the Complaint, that are in Plaintiff's possession, custody or control, for the time period commencing two years prior to the filing of the Complaint and continuing through and including the date of trial.

    b.  Defendant shall take reasonable steps to retain, until the conclusion of this lawsuit, all documents, as that term is defined in D. Conn. L.

9

Civ. R. 26, concerning or relating to the allegations of the Complaint, that are in Defendant's possession, custody or control, for the time period commencing two years prior to the filing of the Complaint and continuing through and including the date of trial.

11. Undersigned counsel have discussed discovery procedures that minimize the risk of waiver of privilege or work-product protection, including procedures for asserting privilege claims after production. The parties agree to the following procedures for asserting claims of privilege after production:

    a. If electronically stored information is produced in discovery and is subject to a claim of privilege or of protection as trial preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly sequester the information and any copies it has and may not use or disclose the information until the claim is resolved. If the receiving party does not dispute the producing party's claim of privilege or work product, the receiving party shall promptly return the information or destroy it. If the receiving party disputes the privilege or work product claim, it may promptly present the information to the Court under seal for a determination of the claim, or the receiving party may inform the producing party in writing that it disputes the claim. The producing party may then promptly move the Court for an Order to return the electronically stored information. If the receiving party disclosed the

information before being notified, it must take reasonable steps to retrieve it. The producing party must preserve the information until the claim is resolved.

F. **OTHER SCHEDULING ISSUES**

Not applicable.

G. **SUMMARY JUDGMENT MOTIONS**

Summary judgment motions, which must comply with Local Rule 56, will be filed on or before January 29, 2021.

H. **Joint Trial Memorandum**

The joint trial memorandum required by the Standing Order on Trial Memoranda in Civil Cases will be filed within 45 days of the ruling on dispositive motions, should such motions be filed, or within 45 days after the parties notify one another that dispositive motions will not be filed.

VI. **TRIAL READINESS**

The case will be ready for trial within 30 days of the filing of a joint trial memorandum. As officers of the Court, undersigned counsel agree to cooperate with each other and the Court to promote the just, speedy and inexpensive determination of this action.


Plaintiff

    /s/ Robert J. De Groot, Esq.               1/27/2020

By _____  Date: _____
    Robert J. De Groot, Esq.
    Admitted Pro Hac Vice
    60 Park Pl.
    Newark, N.J. 07102
    973-643-1930

Defendant

      /s/ Patrick M. Noonan, Esq.            1/27/2020

By _____ Date: _____
      Patrick M. Noonan, Esq.
      Bar Number: CT00189
      Donahue, Durham & Noonan, P.C.
      741 Boston Post Road
      Guilford, CT 06437
      203-457-5209